Reese, J.
delivered the opinion of the court.
The main question arising upon the bill and answers, is, whether the deed of trust, by virtue of which Tompkins and dfhers claim to be entitled to the property and effects assigned to them, for satisfaction of their debts, be fraudulent in fact, or by operation of law as against the complainant, a creditor of the assigning debtor, Turner?
In the deed of trust, there is specified a bill single of the amount of $300, as due to Tompkins, and another of $200 as due to McAuly, which, it is admitted in the answers, were executed at the time of making the. assignment, not to secure any debt then due, or any advances then made, but upon a verbal agreement and understanding between the parties, that credit should be given to the debtor, and advances made for the joint object of enabling him to support his family, and to manufacture the materials assigned for the benefit of the assignor and assignees. Was this fraudulent in fact or by operation of law, as being calculated to embarrass and postpone other creditors in the collection of their debts?
It is said, in argument, on behalf of the assignees, and authorities are cited to prove, that it is not a circumstance vitiating a deed of assignment, if it stipulate for future advances. ,Without deeming it necessary to assent to, or to repudiate this proposition, it is sufficient to remark that such is not the stipulation in the deed, upon this record. It announces to other creditors, an existing debt of $500, which did not in fact exist, and for which there was no consideration, other than the secret agreement between the parties, which is *329 stated in the answers. If this may be done, and the deed remain a valid security for the debt really due, is it not obvious that it would furnish to fraudulent and embarrassed debtors, and their friendly assignees, a mode of protecting property against the executions of other creditors, as simple and easy as it would be safe? A small amount of actual indebtedness, to serve as a nucleus, might, in this manner, be enlarged to such magnitude as to cover considerable property, and so as to alarm and repel other creditors; and, depriving them of the legal remedies, constrain them to seek discovery and relief, and investigate the question of indebtedness and its extent, in a court of chancery. Perceiving from the pleadings no ground upon which to charge the parties to this deed of trust, with intentional fraud, or fraud in fact, we entertain no doubt that, for the reasons stated, the deed is fraudulent by operation of law, and must be set aside as void, and as constituting no valid security for the debt mentioned in it.
As resulting from this opinion, it is clear that, as against the assignees in the deed mentioned, the complainant in the original bill has a right to claim and receive such effects, or the proceeds of such effects, as existing in specie at the time of the issuance of complainant’s scire facias, would, in the absence of the deed of trust, have been subjected to the operation of its lien: after deducting all reasonable charges and commissions for taking care of said effects, or for the sale of them and the collection of the proceeds.
2. By filing his bill in the present case, the complainant has obtained an equitable lien, which enables him to claim an account of the funds of his debtor in the hands of defendant, Tompkins, beyond the amount of the proceeds of the effects above referred to, as subjected to the lien of the execution.
Butin taking this account, we are of opinion that the funds in the hands of Tompkins, at the time of filing this bill, other than those subjected to the lien of the execution mentioned, may be retained by Tompkins to the extent of his bona fide debts. This is sanctioned, we think, by the principle determined in the case of Ames v. Blunt, 5 Paige, and the case of Grover v. Wakeman, 11 Wendell, 187. These were cases, indeed, where the funds were in the hands of assignees who *330 were not creditors; but we apprehend the principle will apply to the present case.
In the first named case, the Chancellor, upon this point, says-: “I apprehend that the liability of the assignees, for the proceeds of the assigned property, which have been distributed to the bona fide creditors under the assignment, must depend upon the question whether the legal or equitable rights of the complainants have been impaired or affected by such distribution. In other words, whether they have in fact been defrauded thereby. The principle, then, upon which the decision of this court in Wakeman v. Grover, and of the Vice .Chancellor in the present case is sustainable, is, that the proceeds of the assigned property had been distributed, according to the directions of the assignors, in payment oí bona fide creditors, to whom such proceeds might have been lawfully distributed by the assignors themselves at any time before the complainant had obtained any legal or equitable lien thereon; and, therefore, that the complainants have not been defrauded or injured by such distribution. But, if the assigned property, or the proceeds thereof, had remained in the hands of the assignees, undistributed, at the time of filing the bill, which would have given to the complainants a lien thereon as the property of their debtor, the assignment being voidable by them at that time, it would be a fraud upon their rights to distribute the proceeds afterwards.”
If, therefore, before the filing of the bill, Tompkins had received his bona fide debt, it was, as if paid to him by the assignor, and would not be in fraud of the legal or equitable lien of complainants; and if, as assignee, he paid over in satisfaction of bona fide debts to the other parties, money of the debtor in his hands, before complainant’s legal or equitable lien attached, the payment will be good. But if money of the .debtor over the amount of his bona fide debt, were in his hands at the filing of the bill, he must account for it in this .case.
But as to the money arising from effects and sources upon which the complainant’s fieri facias created no lien, and which cannot be retained upon the principle last above stated, all the parties, creditors, before the court, in the present bill, *331 will be entitled pro rata. As to the accounts and cho'ses in action which remain uncollected, the same principle will bé applied.
The question of priority as between the complainant in thé original bill, and the complainants in the bill in the nature of á cross-bill, will be reserved till the coming in of the report.